UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON WILLIAMS,

        Petitioner,

                                        Case No. 1:07-cv-688
v.                                        Hon. Robert J. Jonker

KENNETH MCKEE,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Preston Lee Williams, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.       Background

Williams was charged with criminal sexual conduct (CSC) arising from the following incidents:

> Defendant became romantically involved with the victim's mother, and began residing with the victim and her mother in May 1997. The victim was then fourteen years of age.

> The victim testified at trial that shortly after defendant began living with them defendant came into her bedroom while her mother was at work, woke her and shared a couple of marijuana "cigars", referred to as "blunts", with her. He then left the room, returned a short time later, lay down next to the victim in bed, slid his hand inside her pajama bottoms and underwear and inserted a finger into her vagina. He then removed his finger, removed the victim's sleepwear, and performed cunnilingus on the victim. Defendant then engaged in sexual intercourse with the victim.

> The victim further testified that, approximately two weeks later, while defendant and the victim were watching television in her mother's bedroom, defendant removed her clothing, ran his hands over her and then engaged in sexual intercourse with her.

Subsequent to these sexual contacts, defendant married the victim's mother. The couple separated in May 1999, after the victim's mother discovered defendant's marital infidelity. Despite the separation, the victim and her mother celebrated defendant's June 1999 birthday with him. The victim testified that, following dinner and after the victim's mother left the residence, defendant and the victim smoked marijuana provided by defendant. They then went to her mother's bedroom and engaged in sexual intercourse.

The victim testified that sometime between August and October 1999 defendant came to her residence while her mother was at work. She and defendant smoked some "blunts" and drank alcoholic beverages, and then engaged in sexual intercourse in her bedroom. Afterwards, defendant wished the victim a belated happy seventeenth birthday.

Defendant denied any sexual contact with the victim. Defendant claimed that the victim fabricated the sexual abuse allegations to punish him for telling her that he no longer wished to consider her his daughter and for being unfaithful to her mother. Additionally, defendant challenged the credibility of the victim by highlighting the inconsistencies between her trial testimony and various out-of-court statements. In particular, defendant emphasized the fact that the victim initially told a police detective, a children's protective services specialist, and a physician that she was last sexually assaulted by defendant on her seventeenth birthday in August 1999, but modified her statement when she subsequently learned that defendant was incarcerated on her birthday.

*People v. Preston Lee Williams*, No. 229920, slip op. at 1-2 (Mich. App. Dec. 13, 2002) (docket no. 31).

A jury acquitted petitioner of one count of CSC-3, but convicted him of four counts of first-degree criminal sexual conduct (CSC-1), M.C.L. § 750.520b(1)(b), and one count of third-degree criminal sexual conduct (CSC-3), M.C.L. § 750.520d. *Id.*, slip op. at 1. The trial court sentenced petitioner as a fourth habitual offender, M.C.L. § 769.12, to concurrent prison terms of 25 to 40 years each for the CSC-1 convictions and 200 to 360 months for the CSC-3 conviction. *Id.*

Petitioner, through counsel, presented two issues on appeal:

I.    Petitioner should be granted a new trial. He was denied a fair trial when he was paraded in front of the jury in shackles, thereby lifting the cloak of innocence in which he was entitled to appear.

II.   Petitioner should be granted a new trial, or a remand in order to conduct an evidentiary hearing, for the reason that trial defense counsel's performance was ineffective under the Sixth Amendment of the United States Constitution.

III.  Petitioner's conviction must be vacated. The prosecution produced insufficient evidence that these criminal sexual conduct crimes were ever committed.

Brief on Appeal (docket no. 31).

The Michigan Court of Appeals affirmed petitioner's convictions. *See Williams,* No. 229920. Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied. *See People v. Preston Lee Williams*, No. 123142 (Mich. Oct. 31, 2003) (docket no. 32).

Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MCR 6.500, *et seq.*, raising two issues: (1) ineffective assistance of counsel; and (2) the prosecution's use of perjured testimony to obtain his conviction. *See People v. Preston Lee Williams*, No. C00-000071-FC (Kalamazoo Co. Cir. Ct.) (Opinion and Order denying defendant's motion for relief from judgment) (Sept. 8, 2004) (docket no. 33). The trial court denied this motion because petitioner failed to meet the requirements of MCR 6.508(D). *Id.*, slip op. at 8.

Petitioner sought an application for leave to appeal the following issue to the Michigan Court of Appeals:

I.    Did the trial court clearly err when it held because defendant did not present his claim of ineffective assistance of appellate counsel in a procedural context (i.e., delayed application for leave to appeal), with the Michigan Supreme Court raising his claim of ineffective assistance of appellate counsel he has failed to establish good cause to meet the requirements of MCR 6.508(D). He has not demonstrated good cause nor actual prejudice to show that he is entitled to relief requested pursuant to MCR 6.508(D)(3).

Application for leave to appeal (docket no. 33) (internal quotation marks omitted).

The Michigan Court of Appeals denied petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Preston Lee Williams*, No. 264458 (Mich. App. March 16, 2006).

Petition filed an application for leave to appeal to the Michigan Supreme Court, raising two issues:

I.   Was appellant denied his Fourteenth Amendment right where the Michigan Court of Appeals denied him a full and fair hearing on his post-conviction claims, where it held that appellant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).

II.  Did the trial court clearly err when it held because defendant did not present his claim of ineffective assistance of appellate counsel in a procedural context (i.e., delayed application for leave to appeal), with the Michigan Supreme Court raising his claim of ineffective assistance of appellate counsel he has failed to establish good cause to meet the requirements of MCR 6.508(D). He has not demonstrated good cause nor actual prejudice to show that he is entitled to relief requested pursuant to MCR 6.508(D)(3).

Application for leave to appeal (docket no. 34). The Michigan Supreme Court denied petitioner's application because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Preston Lee Williams*, No. 131127 (Mich. Nov. 29, 2006).

Williams filed a petition for writ of habeas corpus in the Eastern District of Michigan, which was later transferred to this court. *See* docket nos. 1 and 2. Petitioner subsequently filed an amended petition, setting forth the following issues:

I.   The trial court violated petitioner's Fourteenth Amendment right, where the court ordered him to appear in shackles during trial.

II.  Petitioner was denied his Fourteenth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel.

A. Counsel failed to meet with petitioner 106 days prior to trial.

B. Counsel failed to call important fact witnesses.

C. Counsel failed to impeach the prosecution's chief witness.

D. Counsel failed to thoroughly cross-examine prosecution witness Tracy Williams.

E. Counsel failed to submit defense exhibit as evidence for jury consideration during its deliberation.

III. Petitioner was denied his Fourteenth and Sixth Amendment rights where appellate counsel was ineffective during his appeal of right.

A. Counsel failed to investigate petitioner's case because of his workload.

B. Counsel failed to file a motion to extend time in which to file petitioner's brief on appeal.

C. Counsel failed to obtain and submit as (offer of proof) an affidavit from trial counsel to help support the shackling issue that was to be reviewed on appeal.

D. Counsel failed to file a timely motion to remand.

Amend. Petition (docket no. 9).

## II. Procedurally defaulted claims

Habeas review of petitioner's claims raised in Issue I and Issues II A, II B, II C and II E, is precluded pursuant to the doctrine of procedural default. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate

state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

## A.    Petitioner's claim regarding shackles

The Michigan Court of Appeals determined that  petitioner's claim regarding shackles was not preserved, concluding that he  "did not timely raise this issue before the trial court." *People v. Williams*, No. 229920, slip op. at 2. Because petitioner did not comply with the state's contemporaneous-objection rule, the Michigan Court of Appeals treated the claim as waived on direct appeal and reviewed it only for plain error. This waiver resulted in a procedural default of the claim. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*,  440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). *See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, this issue is procedurally

defaulted for purposes of this habeas review. The issues of cause and prejudice are discussed below in subsection C.

### B. Ineffective assistance of counsel

Petitioner has raised five separate claims of ineffective assistance of trial counsel in Issue II: (A) counsel failed to meet with petitioner 106 days prior to trial to prepare his case; (B) counsel failed to call "important fact witnesses" identified as Denise Runge (a housing complex manager) and Chantay Williams (petitioner's sister); (C) counsel failed to impeach the prosecution's chief witness, the victim Tyreka Huntley; (D) counsel failed to thoroughly cross-examine prosecution witness Tracy Williams (the victim's mother); and (E) counsel failed to submit a defense exhibit as evidence for jury consideration during its deliberations, which was identified as the "alleged victim's statement." *See* Amend. Pet. at 7.[1]

The Michigan Court of Appeals observed that petitioner raised a "laundry list" of 18 claims of ineffective assistance of counsel. *See* Brief on Appeal at 16-17 (docket no. 31). The four claims set forth in Issues II A, II B, II C, and II E, are among the fourteen claims that the appellate court deemed waived. *See People v. Williams*, No. 229920, slip op. at 3-4 ("Defendant supplies a laundry list of eighteen alleged instances of constitutionally deficient representation in support of his ineffective assistance claim, but concedes that fourteen of these alleged deficiencies are not apparent on the already-existing record . . . Based on defendant's concession that the record is inadequate as to fourteen of his ineffective assistance of counsel claims, these claims of alleged deficiencies have been waived"). Accordingly, petitioner's claims raised in Issue II A, II B, II C and II E are procedurally defaulted for purposes of this habeas review.

---

[1] Petitioner explained these claims in greater detail in his original petition. *See* docket no. 1.

## C.        Cause and actual prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner asserts ineffective assistance of counsel as cause for the procedural default of the shackling claim raised in Issue I. However, petitioner does not assert any cause for the procedural default of his four ineffective assistance of counsel claims raised in Issue II. Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.*; *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim which can be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Consequently, an ineffective assistance of counsel claim can serve as the cause to excuse a petitioner's procedural default on another claim only if the petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of counsel claim itself. *Lancaster v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003). For the reasons stated in § IV.A.1., *infra*, the court concludes that petitioner's trial counsel was not ineffective with respect to the shackling issue. Accordingly, counsel's actions did not constitute cause for the procedural default.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.*  Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted.  He has failed to meet the fundamental miscarriage of justice exception.  Accordingly, petitioner's Issue I and Issues II A, II B, II C, and II E are procedurally barred and not subject to habeas review.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle

from the Supreme Court but unreasonably applied the principle to the facts of the case before it."
*Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### IV.     Petitioner's habeas claims

### A.     Ineffective assistance of trial counsel

### 1.     Shackling

Petitioner claims that his trial counsel was ineffective for allowing him to be seen in shackles. "As a general rule, a defendant in a criminal case has the right to appear before the jury free from shackles or other physical restraints." *Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir. 1982), citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970). The right to appear without shackles arises from the basic principle of American jurisprudence that a person accused of a crime is presumed innocent until his guilt has been established beyond a reasonable doubt. *Harrell*, 672 F.2d at 635. "For this presumption to be effective, courts must guard against practices which unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." *Id. See Taylor v. Kentucky*, 436 U.S. 478, 485 (1978) ("one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial").

The Michigan Court of Appeals found that petitioner's shackling was not prejudicial under the circumstances of this case:

Here, the jury had already had the opportunity to see the leg shackles [FN1] before defense counsel requested for the record that they be removed. The trial court noted that prior to the trial, defense counsel raised the subject informally in the hallway near the judicial chambers, that the trial court had directed the corrections officers to remove either the belly chains which defendant had been transported in or the leg shackles, that defense counsel had indicated that if defendant had to choose which one of the two restraints was to be removed, the belly chain should be removed, and that defendant had made no previous formal request on the record that all of defendant's restraints be removed in the courtroom. The trial court also noted that defendant was wearing prison clothing, that it was obvious that defendant was in custody, and that defendant had refused the opportunity to wear civilian clothing that had been offered to him prior to jury voir dire.

The trial court then asked one of the corrections officers why defendant was shackled. The officer told the trial court that absent an order from the trial court, Department of Corrections policy required corrections officers to keep defendant shackled. The officer also told the trial court that defendant was at a security level two which, although the meaning of this level was not precisely described for the record, appeared to be a higher security risk than security level one. In addition, the officer stated that the defendant's file revealed that sometime in the past he had attempted to flee from officers in a community setting. The trial court inquired of defense counsel why defendant was in prison, and learned that he had been convicted of felonious assault.

On the basis of this record, we do not find that it is more probable than not that the outcome of the proceedings was affected when the trial court denied defendant's request to remove the leg shackles. First, defendant wore the leg shackles throughout jury voir dire, and did not request their removal until after the jury had been selected. Assuming any jurors saw the shackles, any impressions these jurors had already drawn would not have been affected by removal of the leg shackles after they had already been seen. Second, it is well settled that a trial court has broad discretion in controlling the course of the trial, including the discretion to shackle a defendant during trial. *People v. Banks*, 249 Mich.App 247, 256; ___ NW2d ___ (2002). Where this issue has been properly preserved, we would review a decision to restrain a defendant for an abuse of discretion under the totality of the circumstances. *People v. Dixon*, 217 Mich.App 400, 404; 552 NW2d 663 (1996). The totality of the circumstances here do not support the conclusion that the trial court abused its discretion in determining that some measure of shackling was warranted in light of the fact that defendant was serving a prison sentence for felonious assault and had a history of fleeing officers in the community. Defendant cannot establish prejudice if there was no abuse of discretion by the trial court.

Third, the defendant fails to establish that the potential that some jurors may have seen him with leg shackles was any more prejudicial to his right to be presumed innocent than the fact that defendant wore his prison uniform during voir dire and refused to wear the civilian clothes that had been offered to him, thus more obviously alerting the jury that he was in custody. . .

[FN1. We are compelled to note that the record does not demonstrate with any certainty that any jurors actually did see the shackles.]

*People v. Williams*, No. 229920, slip op. at 2-3.

The record reflects that Williams appeared for the jury voir dire wearing a prison uniform and foot shackles. Prior to entering the courtroom for the jury voir dire, Williams' trial counsel requested that petitioner have restraints removed from both his hands and feet. Trial Trans. I at p. 77 (docket no. 26). The court agreed to remove the belly chain and hand shackles, but the shackles remained on petitioner's feet. *Id.* at pp. 77, 80. Trial counsel stated that according to the Michigan Department of Corrections (MDOC), petitioner was not difficult to transport, violent or a "serious nature of risk for flight." *Id.* at pp. 77-78. Counsel pointed out that "the jury that's been impaneled can see underneath the table and see these shackles on his feet." *Id.* at p. 78. Counsel noted that petitioner was wearing a prison uniform and that the jury would be aware that he was incarcerated, and mentioned that he was going to secure other clothes for petitioner after picking the jury. *Id.* Despite the prison uniforms, counsel felt that the shackles were prejudicial gave the impression that petitioner was a dangerous person. *Id.*

With respect to the prison uniform, the court observed that petitioner was given the opportunity to wear civilian clothing, yet wore prison clothing during jury voir dire. *Id.* at pp. 78-79. Trial counsel conceded that while petitioner was offered civilian clothing to wear during the trial, he declined the offer. *Id.* at p. 83. The court interviewed an MDOC officer, Officer VanDusen, regarding the use of restraints. Officer VanDusen advised the court that the MDOC's policy is to

leave on all restraints as placed until otherwise ordered by the court. *Id.* at pp. 80-81. The MDOC officer advised the court that petitioner was confined at security level two, "had problems fleeing from officers in the past" (i.e., officers within the community, not prison transport officers), and that he was serving a prison sentence for felonious assault. *Id.* at pp. 81-83. Based upon this information, the court exercised its discretion to remove the belly chains but to keep the leg chains attached. *Id.* at p. 83.

Petitioner contends that his counsel was ineffective for failing to raise the shackling issue in the trial court. The Michigan Court of Appeals addressed petitioner's claims that his trial counsel provided ineffective assistance in pertinent part as follows:

> To be successful on claims of ineffective assistance of counsel, defendant must establish that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. [*People v. Sabin (on second remand)*, 242 Mich.App 656, 659; 620 NW2d 19 (2000).] Additionally, a defendant must overcome a strong presumption that the conduct complained of reflects sound trial strategy. *Id.*

> Defendant argues that defense counsel was ineffective because he failed to timely object to defendant being in shackles in the presence of the jury. Even if we assume that counsel's performance was deficient, defendant cannot show that the outcome of the proceedings would have been different. As discussed earlier, the record does not show clear error in the trial court's decision to require that defendant wear leg shackles during the trial. In addition, defendant's own voluntary actions brought to the jury's attention the fact that he was in custody. Finally, the record does not demonstrate that any jurors actually saw the shackles. Accordingly, defendant has failed to demonstrate that counsel's performance was constitutionally deficient. *Sabin*, *supra*.

*People v. Williams*, No. 229920, slip op. at 3-4.

In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's

14

deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(en banc)(emphasis in original), *cert. denied,* 508 U.S. 975 (1993).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

The Michigan Court of Appeals applied the appropriate legal standard in determining petitioner's claim.  The record reflects that petitioner's counsel objected to the shackles during the course of the jury voir dire.  Even if this belated objection was deficient, petitioner was not prejudiced.  While petitioner did not raise the issue of the prison uniform, the state appellate court could consider his decision to wear prison clothing in determining the prejudice caused by wearing the foot shackles.  *See Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) ("shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large" which could affect a juror's judgment and pose a threat to the fairness of the factfinding process).  Petitioner's failure to object to wearing the prison uniform negated any constitutional claim that he was compelled to this identifiable and potentially prejudicial clothing at trial.  *See Estelle v. Williams*,  425 U.S. 501, 508, 512-13 (1976) (observing that "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury").  In other words, petitioner willingly allowed the jury to draw the inference that he was in

15

custody for committing a crime. This inference certainly lessened, if not negated, any prejudice cause by the jury's observation of the foot shackles.

Furthermore, the court was justified in keeping petitioner shackled. After inquiring into petitioner's criminal history (which included *inter alia* flight from police officers) and security classification, the court exercised its discretion to remove the belly chains and hand shackles, but determined to retain the foot shackles. "A trial court's security decisions must be accorded broad discretion and may be reversed only for abuse." *United States v. Buford*, 106 Fed.Appx. 400, 404 (6th Cir. 2004). For these reasons, petitioner was not prejudiced by counsel's actions with respect to wearing shackles in the presence of the jury.

### 2.    Cross-examination of Tracy Williams

Petitioner contends that his counsel was ineffective for failing to thoroughly cross-examine the victim's mother, Tracy Williams. While the Michigan Court of Appeals reviewed the trial transcripts, the court's opinion did not address petitioner's claims in detail. This court has reviewed Tracy Williams' testimony from both the preliminary examination and trial. *See* Prel. Exam. Trans. at pp. 31-40 (docket no. 24); Trial Trans. I at pp. 170-191 (docket no. 26); Trial Trans. II at pp. 195-217 (docket no. 27). The record reflects that petitioner's counsel performed a substantial cross-examination of Tracy Williams at trial and addressed this witness' credibility in some detail. Over the prosecution's objection, defense counsel questioned Tracy Williams regarding the victim's past rebellious and potentially dangerous behavior, giving the following rationale:

> I believe that it goes to the issue of credibility. It's our - We maintain that the mother [Tracy Williams] was having many difficulties with this young lady [the victim] and that Mr. Williams [petitioner], when he came into her life, tried to turn her daughter around and provide a stable father - or male figure for her. [Tracy Williams'] denying this, and I want to ask her about that.

Trial Trans. II at p. 197. For example, counsel questioned Tracy Williams about the fact that the victim "pulled a knife" on her and a police officer, and ran away in 1997 and 1999. *Id.* at pp. 199-201.

One of petitioner's main contentions is that defense counsel did not adequately establish the date on which Tracy Williams rented a clubhouse for the victim's birthday, i.e., whether it was for the victim's 16th birthday in 1998 or her 17th birthday in 1999. *See* Petition at pp. 32-34. However, petitioner does not explain how Tracy Williams' failure to recall this fact was particularly relevant to his guilt or innocence in committing the criminal sexual conduct, or how he was prejudiced by this testimony. Indeed, Tracy Williams' inability to recall when she rented the clubhouse, *see* Trial Trans. I at pp. 181-82, presented the jury with adverse evidence regarding the witness' credibility, in that she could not recall a rather significant event that occurred within about two years of the trial. Defense counsel presented the jury with considerable evidence from which a reasonable jury could question Tracy Williams' credibility. In summary, the record does not support petitioner's claim that his counsel was ineffective for failing to thoroughly cross-examine Tracy Williams.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### B. Ineffective assistance of appellate counsel

Petitioner's final claim involves alleged ineffective assistance of his appellate counsel. Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745

(6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to

ineffective assistance.

### 1. Appellate counsel's untimely motion for remand and brief (Issues III B and D)

Petitioner contends that appellate counsel was ineffective for filing a late motion for remand and brief. In denying petitioner's motion, the trial court observed that the motion to remand raised two issues, i.e., ineffective assistance of trial counsel and being shackled in front of the jury, both of which were addressed by the Michigan Court of Appeals. *Williams*, No. C00-000071 FC (Opinion and Order denying motion for relief from judgment) (Kalamazoo Co. Cir. Ct. Sept. 8, 2004). In addition, the Michigan Court of Appeals considered the issues raised in petitioner's

appellate brief. Assuming that appellate counsel was deficient in filing an untimely motion or brief, petitioner was not prejudiced by counsel's action. *See Strickland,* 466 U.S. at 687. Accordingly, this claim for ineffective assistance of appellate counsel should be denied.

> **2.    Appellate counsel failed to investigate petitioner's case and to secure an affidavit from trial counsel regarding the shackles (Issues III A and C)**

Petitioner contends that appellate counsel was ineffective for failing to investigate his case. Specifically, that appellate counsel failed to obtain an affidavit from trial counsel in support of the shackling issue. Williams' original petition included a copy of an affidavit from his trial counsel, Roger A. Snell, which stated that when petitioner testified at trial, he walked from the defense table to the witness stand in shackles, and that the jury saw him in shackles. *See* Snell Aff., Exh. K (docket no. 1-2).

As previously discussed, the Michigan Court of Appeals listed three reasons in support of its determination that petitioner was not prejudiced by the shackling and observed in a footnote that it was not certain from the record as to whether any jurors actually did see the shackles. Attorney Snell's affidavit addressed the issue raised in the footnote, by presenting evidence that members of the jury saw petitioner in shackles when he testified. However, even if the jury had seen the shackles in the manner described in Attorney Snell's affidavit, petitioner was not prejudiced for the reasons set forth in § IV.A.1., *supra*. Based on this record, the facts as set forth in trial counsel's affidavit would not have changed the result on appeal. Accordingly, appellate counsel's failure to secure such an affidavit did not constitute ineffective assistance of counsel.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  July 21, 2010                             /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).